AUGUSTINE B. JIMENEZ III
State Bar # 012208
Montoya Jimenez, P.A.
3200 N. Central Avenue, Suite 2550
Phoenix, Arizona  85012-2490
602-263-7875
Attorney@ABJLaw.com

X. ALEX CARPIO
State Bar # 023141
Snow & Carpio, PLC
P.O. Box 33994
Phoenix, AZ 85067-3994
602-532-0700
alex@snowcarpio.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| RANDY ALAN PARRAZ, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MARICOPA COUNTY; DEPUTY JAMES CESOLINI and JANE DOE CESOLINI; DEPUTY JEFFREY S. HALL and JANE DOE HALL; CAPTAIN DAVID LOTORNEAU and JANE DOE LOTORNEAU; CHIEF DAVE TROMBI and JANE DOE TROMBI; and CHIEF BRIAN SANDS and JANE DOE SANDS;<br><br>Defendants. | No.  CV10-01663-ROS<br><br>AMENDED COMPLAINT<br><br>(Civil Rights) |

Plaintiff, for his Complaint against Defendants, alleges as follows:

1. At all times mentioned herein, Plaintiff was a resident of Maricopa County, Arizona, and all actions, transactions, omissions and/or occurrences complained of herein occurred within said county and state.

2. Defendant Maricopa County is a body politic in the State of Arizona; Defendant Deputy James Cesolini (Deputy Cesolini), Defendant Deputy Jeffrey

-1-

S. Hall (Deputy Hall), Captain David Lotorneau (Captain Lotorneau), Chief Dave Trombi (Chief Trombi), and Chief Brian Sands (Chief Sands) are all law enforcement officers with the Maricopa County Sheriff's Office. Defendants caused events to occur in Maricopa County, Arizona, and within the jurisdiction of this court.

3. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4. Defendants' acts were committed under color of state or local law, and are sued in both their individual and official capacities. Their actions were taken within the course and scope of their employment with the Maricopa County Sheriff's Office.

5. Jane Doe Cesolini, Jane Doe Hall, Jane Doe Lotorneau, Jane Doe Trombi, and Jane Doe Sands are members of their respective marital communities, and are liable for the conduct of their husbands, Defendants Deputy Cesolini, Deputy Hall, Captain Lotorneau, Chief Trombi, and Chief Sands.

6. That Defendants Deputy Cesolini, Deputy Hall, Captain Lotorneau, Chief Trombi, and Chief Sands, at all times mentioned herein were the agents, partners and/or co-conspirators of their co-defendants, and in doing the things herein alleged, were acting in concert and/or within the course and scope of such agency, partnership and/or conspiracy. The actions of Defendants herein alleged were taken in furtherance of a conspiracy to violate Plaintiff's civil rights, including his rights under the First, Fourth and Fifth Amendments, as made applicable through the Fourteenth Amendment, and in violation of the Fourteenth Amendment to the Constitution of the United States.

7. That the actions of the Defendants, in particular actions in furtherance of their conspiracy to violate the civil rights of Plaintiff, were taken in furtherance of official policies, customs, procedures and authority. That Captain Lotorneau, Chief Trombi and Chief Sands are themselves "policy makers," and their actions in this matter constitute the *de facto* policy, custom and procedures

of the Maricopa County Sheriff's Office. That even if they are not final policy makers, they nonetheless acted in furtherance of the "custom" and policies of the Maricopa County Sheriff's Office of violating people's rights, including abusing its authority to punish and intimidate political rivals and persons.

8. That the Maricopa County Sheriff's Office has a long history of condoning and/or acquiescing in the violation of individuals' civil rights; that in keeping with this custom, Sheriff Joseph M. Arpaio publicly praised the arrest of Plaintiff, and ratified, acquiesced and condoned the violation of Plaintiff's rights, in accordance with the existing custom of the Maricopa County Sheriff's Office. That Sheriff Arpaio is the chief policy maker for the Maricopa County Sheriff's Office. That the customs and policies of the Sheriff's Office were the "driving force" and proximate cause of the constitutional violations against Plaintiff.

9. That Defendants Deputy Cesolini, Deputy Hall, Captain Lotorneau, Chief Trombi and Chief Sands were agents, partners and/or co-conspirators in regard to the malicious prosecution, abuse of process and retaliatory prosecution of Plaintiff.

10. That on or about September 29, 2008, Randy Parraz, a member of the Maricopa Citizens for Safety and Accountability (MCSA), attended a public meeting of the Maricopa County Board of Supervisors. At prior meetings, MCSA and its members had requested that their concerns regarding the Maricopa County Sheriff's Office be placed on the County Board of Supervisor's agenda for formal discussion. That their request had been repeatedly ignored. That the members of the organization had become frustrated by the failure of the Board to address their concerns. That after the prior Board meeting in which members were expelled, and the Board illegally proceeded to meet in violation of public meeting laws, the Maricopa County Security Staff and the Maricopa County Sheriff's Office met several times to discuss actions to be taken against and in response to MCSA and its members – in particular Plaintiff, Randy Parraz, whom they referred to as the

"ring leader" or "puppet." That during the September 29 meeting, in exercise of his First Amendment rights, including his right to "petition the government for redress or grievances," guaranteed to all persons under the Constitution of the United States, Mr. Parraz spoke up without being recognized by the Supervisor Board Chairman Andrew Kunasek. That his exercise of his First Amendment rights consumed approximately six seconds. His statement was in regard to the request that the Board of Supervisors place certain issues on their agenda for public consideration. Immediately after asking his question, Plaintiff immediately and voluntarily turned and exited the auditorium.

11. That additional members of MCSA also made certain statements and requests to or of the Maricopa County Board of Supervisors, and also immediately turned and left the auditorium at the request of Maricopa County Protective Services (Protective Services). That after Plaintiff turned to leave, Chief DaQuisto of Protective Services simply asked Plaintiff to leave the building. Chief DaQuisto did not tell or order Plaintiff to leave the premises or state that he had "trespassed" from the Maricopa County Court Complex on First Avenue and Jefferson Street, which consists of the Supervisors' auditorium and the East, Central and West buildings of the Superior Court.

12. That once Plaintiff exited the auditorium, he was joined by other members of MCSA, and in particular, Corrine Widmer. After approximately two to three minutes, Sheriff's deputies, including Defendants Hall and Cesolini, suddenly converged on Plaintiff, telling him, and only him, that he needed to leave. That on prior occasions, Plaintiff and members of MCSA had met in the same area outside the auditorium. That the subject area is a public space, and that there were no postings of any kind suggesting that it was unlawful for Plaintiff and other members of the public to stand or congregate.

13. When told to leave, Plaintiff, as was his right under law, asked why he needed to leave public property. No response was provided to his repeated

1  request for an explanation as to why he needed to leave. A video of the events
2  outside the auditorium reflect the following interaction between Plaintiff and
3  Protective Services Officer John Locano.
4      Mr. Parraz:    What law has been broken?
5                 [no audible response]
6      Mr. Parraz:    What's the charge?
7                 [brief pause]
8      Mr. Parraz:    What's the charge?
9      Officer Locano:    It doesn't matter.
10     Mr. Parraz:    Yes, it does. I said no. What law has been broken?
11     Unidentified Voice:    You have to leave.
12     Mr. Parraz:    We left. I was told to leave immediately.
13                [inaudible remark]
14     Mr. Parraz:    I said no, what law has been broken?
15 [further difficult to hear, fast-paced exchange between uniformed man
16 and Mr. Parraz. Mr. Parraz is threatened with arrest for trespass. Mr.
17 Parraz looks surprised and wants to know why trespassing is being
18 alleged. As Mr. Parraz and Corrine Widmer turn to leave, Mr. Parraz is
19 arrested by Deputies James Cesolini and Jeffrey Hall.]
20
21     14.    Mr. Parraz was then handcuffed and taken to a holding cell.
22 Sometime thereafter, Captain Lotorneau went to the holding cell and assisted the
23 movement of Mr. Parraz, who has since been placed in shackles. That Captain
24 Lotorneau walked with Parraz through the tunnels that run underground from
25 First Avenue, where he was, to the new jail. That the entire sequence of events of
26 Mr. Parraz's arrest and processing was videotaped by a representative of the
27 Sheriff's Office. That such videotaping evidences the predetermined plan to arrest
28

Plaintiff. In addition, Plaintiff's partner was initially held for arrest and then released when it was determined that he was not the Plaintiff.

15. That about the time that the arrest process was complete, and after the videotaping was conducted by Lt. Irene Plata of the Maricopa County Sheriff's Office. Chief Sands and/or Chief Trombi ordered that Mr. Parraz be "page twoed" to add an additional charge of disorderly conduct. This "page twoing" of Mr. Parraz required that Plaintiff be detained again for hours, be reprocessed and have a second initial appearance on the additional charge of disorderly conduct. This order had the effect of unfairly and unnecessarily punishing Mr. Parraz, and was part of a larger design to harass and punish Mr. Parraz. That Mr. Parraz simply could have been issued a citation after having been arrested and processed for trespass. That prior to the September 29, 2008, meeting, Defendant Lotorneau had followed, harassed and baited Plaintiff on several occasions. That Defendant Lotorneau eavesdropped on personal conversations between Plaintiff and other members of MCSA.

16. That as a result of Defendants' actions, Plaintiff was prosecuted, requiring him to retain counsel and incur cost and expenses; that the matter proceeded to trial; and that the case against Plaintiff was dismissed by the court by directed verdict.

## COUNT I
(Malicious Prosecution – 42 U.S.C. § 1983)

17. Plaintiff hereby incorporates all preceding paragraphs by reference.

18. That Defendants instituted criminal actions against Plaintiff; that Plaintiff was subsequently exonerated of all charges; that Defendants lacked probable cause to initiate the criminal proceedings.

19. That Plaintiff suffered deprivation of liberty by seizure and process as a consequence of the legal proceedings.

## COUNT II

(Abuse of Process – 42 U.S.C. § 1983)

20. Plaintiff hereby incorporates all preceding paragraphs by reference.

21. That this count is brought pursuant to 42 U.S.C. § 1983 and the Constitution of the United States of America and Amendments thereto.

22. That Defendants employed legal process for the unlawful purpose of punishing Plaintiff's exercise of his First Amendment rights, to intimidate and coerce him and MCSA members from further demanding that the Sheriff's Office be investigated and compelled to respond to citizens' concerns and complains; and to wrongfully deter the members of MSCA from further expressing their disfavor and complaints against Sheriff Joseph Arpaio and the Maricopa County Sheriff's Office.

## COUNT III

(Retaliatory Prosecution – 42 U.S.C. § 1983)

23. Plaintiff hereby incorporates all preceding paragraphs by reference.

24. That this count is brought pursuant to 42 U.S.C. § 1983 and the Constitution of the United States of America and Amendments thereto.

25. That Plaintiff had a First Amendment right to voice his concerns regarding a public entity to that public entity's governing body for redress.

26. That Plaintiff's exercise of his First Amendment rights was a "substantial factor" or motivating factor in the actions taken by Defendants against him and MCSA. That such conduct violated Plaintiff's First and Fourth Amendment rights.

27. That Defendants lacked probable cause for prosecuting Plaintiff for trespassing and disorderly conduct.

## COUNT IV

(Municipal Liability – 42 U.S.C. § 1983)

28. Plaintiff hereby incorporates all preceding paragraphs by reference.

29. That Defendants' actions were in accordance with then existing policies, customs and/or procedures of the Maricopa County Sheriff's Office; that the actions taken by Defendants individually and pursuant to a conspiracy to violate Plaintiff's constitutional rights were the driving force behind the constitutional violations and were the cause of the constitutional violations suffered by Plaintiff; that Maricopa County is therefore liable for Defendants' conduct.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff damages for the violation of his constitutional rights; general damages for the cost and expense of defending against the criminal charges; and for his attorneys' fees and costs as allowed by law, specifically 42 U.S.C. § 1988.

Dated this 16th day of August, 2010.

> MONTOYA JIMENEZ, P.A.
> s/Augustine B. Jimenez III
> Augustine B. Jimenez III
> 3200 N. Central Avenue, Suite 2550
> Phoenix, AZ 85012-2490
>
> X. Alex Carpio
> SNOW & CARPIO, PLC
> P.O. Box 33994
> Phoenix, AZ 85067-3994
> Attorneys for Plaintiff